UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

               v.                                 **DECISION AND ORDER**

SCOTT SCHAFER,                         6:18-CR-06152 EAW

                         Defendant.

_____

## I.    <u>INTRODUCTION</u>

Pending before the Court is a motion filed by defendant Scott Schafer (hereinafter "Defendant") for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. 49). For the reasons set forth below, Defendant's motion is granted.

## II.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Defendant was charged by criminal complaint filed on May 14, 2018, with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Dkt. 1). On January 30, 2019, Defendant appeared before the undersigned, waived indictment, and pleaded guilty pursuant to a plea agreement to possession with intent to distribute methamphetamine. (Dkt. 30; Dkt. 31; Dkt. 32; Dkt. 33). The plea agreement contemplated a recommended prison sentence under the Sentencing Guidelines of 37 to 46 months. (Dkt. 32 at ¶ 9).

During the pendency of the criminal proceeding, Defendant repeatedly violated the terms and conditions of pretrial release, ultimately resulting in the undersigned revoking Defendant's release and remanding him into the custody of the United States Marshals

Service.  (Dkt. 7; Dkt. 9; Dkt. 10; Dkt. 23).  As the undersigned noted at Defendant's sentencing, his pretrial performance was "not good" and this was related to his underlying substance abuse issues.  (Dkt. 46 at 14).

Defendant was sentenced by the undersigned on August 6, 2019, to a below-Guidelines sentence of 30 months in prison, to be followed by three years supervised release.  (Dkt. 43).  Although the Court and Presentence Investigation Report calculated Defendant as a criminal history category V (Dkt. 38 at ¶ 65), the undersigned noted at sentencing that a categorization of V for Defendant's criminal history overrepresented the significance of his prior criminal conduct which, in part, was the basis for the Court varying from the Guidelines.  (*See* Dkt. 46 at 16).  Defendant's addiction issues appear to be the root cause of his prior criminal history, with all of his prior convictions constituting misdemeanors with one exception—a felony conviction in November 2016, for aggravated unlicensed operation to which he was sentenced to time served (25 days).  (Dkt. 38 at ¶ 61; *see id.* ¶¶ 53-62).

On April 24, 2020, Defendant filed the pending motion for compassionate release. (Dkt. 49).  Defendant contends that his request for release is justified by the COVID-19 pandemic;[1] the overcrowding of the facility where he is housed—Allenwood (Low) Federal Correctional Institution ("Allenwood (Low) FCI")—which is more than 30% over

---

[1]    On March 13, 2020, President Trump declared a National Emergency concerning COVID-19. Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020). According to the World Health Organization's website, as of May 18, 2020, there were 4,589,526 confirmed cases of COVID-19 worldwide, with 310,391 confirmed deaths. *See Coronavirus (COVID-19)*, World Health Org., https://covid19.who.int/ (last visited May 18, 2020).

capacity; Defendant's medical conditions of asthma requiring regular use of an Albuterol inhaler and being immunocompromised which place him in a higher-risk category with respect to COVID-19;[2] the stable residence with his mother where Defendant would reside if released; the fact that Defendant's offense conduct and criminal history relate to his substance abuse issues for which he is receiving no treatment at the present time as all programming within the Bureau of Prisons ("BOP") has been suspended, whereas if released Defendant could at least receive telephonic treatment; and the fact that Defendant is scheduled to be released to supervised release on October 19, 2020, and will likely be transferred to a halfway house in July 2020.  (Dkt. 49).

The Government filed a response in opposition on May 7, 2020.  (Dkt. 53).  The Government makes no effort to dispute Defendant's claims about the overcrowding within Allenwood (Low) FCI or the date that Defendant is likely to be released to a halfway house. (Dkt. 53).  Instead, the Government contends that Defendant's medical conditions, while "serious and complicated," are well controlled (Dkt. 53 at 2, 5); the BOP is undertaking significant efforts to control the spread of the virus within its inmate and staff populations (*id*. at 5-8); and as of May 7, 2020, no COVID-19 cases have been diagnosed at Allenwood (Low) FCI (*id*. at 8).  The Government cites to the denial of Defendant's request for

---

[2]     According to the Centers for Disease Control and Prevention ("CDC"), COVID-19 is "a new disease and there is limited information regarding risk factors for severe disease;" however, based on known information the CDC identifies the following individuals at "higher risk for severe illness from COVID-19":  "People of all ages with underlying medical conditions, particularly if not well controlled" including individuals with "chronic lung disease or moderate to severe asthma" and people "who are immunocompromised." *Frequently Asked Questions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/faq.html (last visited May 18, 2020).

compassionate release by the Warden at Allenwood (Low) FCI on April 10, 2020, "upon the basis that the defendant was able to move within his living quarters and tend to daily living needs, was able to walk to health services and to food services." (*Id*. at 9; *see* Dkt. 51-1 at 1).

Defendant filed a reply in further support of his motion on May 13, 2020. (Dkt. 54). Defendant contends that the steps undertaken by the BOP and highlighted by the Government "have proven ineffectual" and a lack of testing throughout the BOP makes it impossible to definitively state that there are no individuals in the facility who have the virus; "only that there are no positive tests." (*Id*. at 1). Defendant also highlights the BOP's recent decision to release Paul Manafort, President Trump's former campaign chairman, even though he was in a facility without any reported COVID-19 cases. (*Id*. at 2). In other words, even the BOP recognizes the risks associated with COVID-19 in its facilities where there are no positive cases, as represented by its decision to release Mr. Manafort who had not yet served even half of his seven-year sentence. (*Id*.). *See* Sadie Gurman, *Ex-Trump Campaign Chairman Paul Manafort Released From Prison to Home Confinement*, The Wall Street Journal (May 14, 2020), https://www.wsj.com/articles/ex-trump-campaign-chairman-paul-manafort-released-to-home-confinement-11589375414 ("Mr. Manafort's release comes amid broader confusion over how prison officials are selecting inmates for home confinement. Prison officials have said they are giving priority to those who have served at least half of their sentences, or who have 18 months or less left and have served 25% of their terms. Mr. Manafort, who had served only about two years of his sentence and was set to be released on Nov. 3, 2024, hadn't met either criteria.").

In addition to the submissions of counsel, the United States Probation Office ("USPO") emailed the Court and counsel a statement concerning its position on the pending motion, on or about May 1, 2020.[3]

## III.   LEGAL STANDARD AND ANALYSIS

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, __ F. Supp. 3d __, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). The compassionate release statute, as amended by the First Step Act, is such a statutory exception, and provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Relief is appropriate pursuant to § 3582(c)(1)(A) when the following conditions are met: (1) the exhaustion requirement of the statute is satisfied; (2) extraordinary and compelling reasons warrant a reduction of the prison sentence; (3) the factors set forth at 18 U.S.C. § 3553(a) support modification of the prison term; and (4) the

---

[3]     The USPO provided information concerning the number of COVID-19 positive cases at the facility where Defendant is housed and facilities in close proximity, and information concerning Defendant's medical condition. However, the USPO did not take a position as to whether the motion for compassionate release should be granted or denied.

reduction in the prison sentence is consistent with the Sentencing Commission's policy statements.

Here, the Government does not oppose Defendant's application on exhaustion grounds.  (Dkt. 53 at 2).  *See United States v. Wen*, ___ F. Supp. 3d ___, No. 6:17-CR-06173 EAW, 2020 WL 1845104, at *4-5 (W.D.N.Y. Apr. 13, 2020) (as a claim-processing rule, § 3582(c)(1)(A)'s exhaustion requirement is non-jurisdictional and thus subject to the doctrines of waiver and equitable estoppel).  In this case, Defendant submitted a request to the Warden at Allenwood (Low) FCI on April 8, 2020, the request was denied two days later, and more than 30 days have elapsed since the Warden received the request.  Thus, the exhaustion requirements of the statute do not operate to bar the Court's consideration of the motion.

In addition, the Government does not oppose the motion on the grounds that Defendant is a danger to the safety of any other person or to the community.  (*See generally* Dkt. 53).  The Sentencing Commission's relevant policy statement pertinent to motions under § 3582(c)(1)(A) is contained at U.S.S.G. § 1B1.13, and among other factors requires that a motion for a reduction in a prison sentence should only be granted where the Court determines that a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]"[4]  The Government makes no argument

---

[4]    While called out as a separate consideration pursuant to § 1B1.13, a defendant's dangerousness is also necessarily part of a court's consideration of the § 3553(a) factors as mandated by the statute.  In other words, it is not just the Sentencing Commission's policy statement that requires a court to consider a defendant's risk of danger.

that Defendant presents a danger, and the Court concludes that, with appropriate conditions of supervised release, the community is sufficiently protected from Defendant's risk of danger—which relates to his addiction issues and potential illegal drug use.[5]  As discussed further below in the Court's consideration of the § 3553(a) factors, the root cause of Defendant's criminal conduct relates to his addiction struggles, this case was not a typical drug trafficking conspiracy, and Defendant's conduct did not involve violent conduct or firearms.

However, the Government does oppose Defendant's motion on the grounds that he has failed to establish extraordinary and compelling reasons justifying a reduction in this sentence.  (Dkt. 53 at 10 ("The Court should deny defendant's motion because the defendant has not demonstrated an 'extraordinary and compelling' reason to modify his sentence.")).  The Court considers both that factor and the § 3553(a) factors below.

A.      **Extraordinary and Compelling Reasons**

Pursuant to 28 U.S.C. § 994(t), Congress delegated authority to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction[.]"  As stated above, the Sentencing Commission's applicable policy statement is U.S.S.G. § 1B1.13, but "this statement is at least partly anachronistic because it has not yet been updated to reflect the new procedural innovations of the First Step Act."

---

[5]      In fact, the Court's recollection is that the revocation of Defendant's pretrial release was driven by the Court and the USPO, not the Government, which initially advocated that Defendant be allowed to remain released pending sentencing and after his anticipated plea.

*United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), __ F. Supp. 3d __, 2020 WL
91399, at *4 (S.D.N.Y. Jan. 8, 2020).

Application Note 1 to U.S.S.G. § 1B1.13 enumerates the circumstances that can
constitute extraordinary and compelling reasons.   These include situations where a
defendant is "suffering from a serious physical or medical condition . . . that substantially
diminishes the ability of the defendant to provide self-care within the environment of a
correctional facility and from which he or she is not expected to recover[.]"   U.S.S.G.
§ 1B1.13, Application Note 1(A)(ii)(I).   Application Note 1 also includes a catch-all
circumstance where "the Director of the Bureau of Prisons [determines that] there exists in
the defendant's case an extraordinary and compelling reason other than, or in combination
with, the reasons described in [the other subdivisions of the Application Note]."   *Id*. at
Application Note 1(D).

The anachronistic nature of Application Note 1 is demonstrated by the catch-all
provision's sole reference to the BOP Director, but this Court agrees with those other courts
that have concluded that the discretion afforded the BOP Director under that catch-all
provision also extends to a court considering a compassionate release motion, consistent
with the expansion of § 3582(c)(1)(A) relief under the First Step Act.   *See*, *e.g.*, *United
States v. Daugerdas*, ___ F. Supp. 3d ___, No. 09-CR-581, 2020 WL 2097653, at *2
(S.D.N.Y. May 1, 2020) ("Thus, this Court aligns itself with other judges in this district
finding that the amendments to the compassionate release statute 'grant this Court the same
discretion as that previously give[n] to the BOP Director, and therefore the Court may
independently evaluate whether [a defendant] has raised an extraordinary and compelling

reason for compassionate release' under the 'catch-all' provision." (alterations in original)).

The Government argues that if the Court finds extraordinary and compelling circumstances in this case, "every single federal prisoner with the same conditions, without more, would be entitled to release to home confinement." (Dkt. 53 at 2). But this is not so. The Court concludes that Defendant has established extraordinary and compelling circumstances, but this conclusion is not just based on his medical conditions. Rather, it is based on the totality of circumstances pertinent to this case.

To be sure, Defendant's medical conditions, while apparently well controlled, are serious and he is not expected to recover from those conditions.[6] Even the Government acknowledges as much. (Dkt. 53 at 2). Defendant is not just immunocompromised, presenting an increased risk for serious illness from COVID-19 according to the CDC, but he also suffers from the respiratory ailment of asthma, further compounding the seriousness of his medical conditions in the face of COVID-19.

---

[6]     With the Court's permission (Dkt. 48), Defendant filed an unredacted version of his motion under seal to the extent it made specific reference to his medical conditions. (Dkt. 50; Dkt. 52). However, the Government has publicly filed information concerning Defendant's medical conditions. (Dkt. 53). The Court discusses Defendant's medical conditions in this Decision and Order generally but without specific details. In generally discussing Defendant's medical conditions, the Court "has determined that the presumption of access to the courts overcomes [Defendant's] privacy interest" which he has at least waived in part by filing the present motion. *Ebbers*, 2020 WL 91399, at *1 n.1 (citing *United States v. King*, 2012 WL 2196674, at *2 (S.D.N.Y. June 15, 2012) (declining to seal medical records because the defendant asked the court "to consider [her medical records] in arriving at the sentence in [her] case")).

Allenwood (Low) FCI has not reported any cases of inmates or staff infected with this virus, and that factor is certainly relevant to the Court's consideration.  But it is not dispositive for at least a couple reasons.  First, it is not just the present situation at the prison that is relevant to the Court's consideration, but also the credible and realistic future risk.  Prison settings present unique challenges in preventing the spread of infectious diseases.  *See generally Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (describing overcrowded California prison system as "breeding grounds for disease").  Those challenges appear particularly acute when dealing with COVID-19.  As United States District Judge Paul W. Grimm aptly explained in *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857 (D. Md. Mar. 17, 2020):

> With no known effective treatment, and vaccines months (or more) away, public health officials have been left to urge the public to practice "social distancing," frequent (and thorough) hand washing, and avoidance of close contact with others (in increasingly more restrictive terms)—all of which are extremely difficult to implement in a detention facility.

*Id.* at *2. Particularly in an overcrowded facility like Allenwood (Low) FCI (again, a fact undisputed by the Government), the introduction of a highly contagious virus like COVID-19 could spread like a brush fire.  Defendant has presented statistics that the rate of COVID-19 infections within the BOP is approximately twice the rate of infections in the non-incarcerated population of the United States (Dkt. 49 at 13), and the Government has not challenged those figures.  Moreover, the Court agrees with Defendant that the recent highly publicized release of Mr. Manafort by the BOP on compassionate release grounds, from a facility with no documented cases of COVID-19, suggests that the BOP recognizes the

risks to a medically vulnerable inmate in even its facilities with no positive COVID-19 cases.

Second, the information regarding the number of infections within a facility has limited value without knowing the extent of testing within the facility. *See United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221, at *3 (E.D.N.Y. Apr. 17, 2020) ("[A]bsent more information about how much testing the BOP is conducting, it is possible that undetected cases are present in the facility."). In other words, without knowing the percentage of the prison population that has been tested, the fact that there are no positive COVID-19 cases provides little insight into whether the virus has reached the facility. The lack of adequate testing in other BOP facilities is well-documented. *See*, *e.g.*, *Wilson v. Williams*, ___ F. Supp. 3d ___, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020), *appeal filed*, No. 20-3447, 2020 WL 2120814 (6th Cir. Apr. 27, 2020). And while anecdotal, the impact of testing in another case assigned to the undersigned demonstrates the importance of adequate testing in evaluating any statistics concerning the number of confirmed virus cases within a particular facility.

The Court is handling a matter designated as *Hassoun v. Searls*, Case No. 1:19-cv-00370-EAW, involving an individual detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. On April 8, 2020, there were zero confirmed cases of COVID-19 at the BFDF. Decl. of Capt. Abelardo Montalvo, M.D, *Hassoun v. Searls*, 1:19-cv-00370-EAW, Dkt. 145 at ¶ 11 (W.D.N.Y. Apr. 8, 2020). Then, the next day, the facility had four confirmed COVID-19 cases as a result of additional testing. Decl. of Capt. Carlos M. Quinones, M.D., *Hassoun v. Searls*, 1:19-cv-00370-EAW, Dkt. 148 at ¶ 4

(W.D.N.Y. Apr. 9, 2020).  These numbers continued to increase during the ensuing days, ultimately causing the BFDF to test its entire population within a particular housing unit, with 27 of the 48 detainees housed in that unit testing positive, many of whom were asymptomatic.  Letter (COVID-19 Update), *Hassoun v. Searls*, 1:19-cv-00370-EAW, Dkt. 152 (W.D.N.Y. Apr. 20, 2020).  As of April 20, 2020 (*i.e.* less than 2 weeks after the facility reported zero positive COVID-19 detainees), the BFDF reported that 46 of its 319 detainees were positive for COVID-19.  *Id.*  In other words, as a result of more robust testing, within less than two weeks the BFDF went from 0% of its detainee population testing positive for COVID-19 to over 14% of its population testing positive.

While the Government cites to steps undertaken by the BOP to prevent the spread of COVID-19, and its apparent success in doing so at Allenwood (Low) FCI, the reality is that Defendant's preexisting medical conditions make him uniquely vulnerable to the virus, and if it spreads to the overcrowded facility where he is housed, it may be too late once the introduction of the virus into the facility is known.  Of course, the virus may never reach Allenwood (Low) FCI, and Defendant's preexisting medical conditions cannot constitute a "get-out-of-jail-free" card—and standing alone, they would not justify a reduction in Defendant's sentence.  However, based upon the Court's careful consideration of all the circumstances presented with this motion, it concludes that extraordinary and compelling reasons exist for a reduction in Defendant's sentence.

In sum, considering Defendant's serious preexisting medical conditions, the overcrowded nature of the facility where he is housed (being greater than 30% overcapacity), the increased risk of COVID-19 in prison settings, the five months left on

Defendant's prison sentence (with just two months before he is likely released to a halfway house), the fact that his offense conduct and criminal history relate to substance abuse issues for which he is receiving no treatment while incarcerated, and the stable residence with his mother where he could be released to home confinement, the Court concludes, like other courts have concluded, that Defendant has established extraordinary and compelling reasons for a reduction in his prison sentence. *See Daugerdas*, 2020 WL 2097653, at *3 ("Other courts in this district have found that defendants' pre-existing medical conditions, combined with the increased risk of COVID-19 in prison settings, create 'extraordinary and compelling reasons' under the Policy Statement."); *United States v. Bess*, No. 16-CR-156, 2020 WL 1940809, at *9 (W.D.N.Y. Apr. 22, 2020) ("[T]he grave risks that COVID-19 poses to individuals with the defendant's medical conditions, combined with the increased risk inmates face of contracting the disease at [Federal Correctional Complex] Butner, constitute 'extraordinary and compelling reasons for sentence reduction.'"); *United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1916773, at *3 (D. Conn. Apr. 20, 2020) ("Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions—respiratory conditions in particular—in combination with the increased risks of COVID-19 in prisons constitute 'extraordinary and compelling reasons' warranting relief."); *United States v. Hernandez*, No. 18 CR. 834-04 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (COVID-19's heightened risk to incarcerated defendants with respiratory ailments such as asthma along with the crowded nature of the jail facility constituted extraordinary and compelling reasons); *United States v. Perez*, No. 17 CR. 513-3 (AT), 2020 WL 1546422, at *4

- 13 -

(S.D.N.Y. Apr. 1, 2020) (defendant's medical condition, combined with the limited time remaining on his prison sentence and the high risk posed by COVID-19 in prison facility constituted extraordinary and compelling reasons for release); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the [prison].").

### B.    § 3553(a) Factors

The factors set forth at 18 U.S.C. § 3553(a) to be considered in connection with the imposition of a sentence include the following:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)    the need for the sentence imposed—
    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and
    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)    the kinds of sentences available;
(4)    the kinds of sentence and the sentencing range established [under the Sentencing Guidelines.]

18 U.S.C. § 3553(a)(1-4).  Having concluded that extraordinary and compelling reasons justify a reduction in Defendant's sentence, the Court must now consider the applicable factors set forth at 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A); *see Ebbers*, 2020 WL

- 14 -

91399, at *7 ("The Court thus finds that, in considering the section 3553(a) factors, it should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence.").

Defendant, who is 41 years old, engaged in serious criminal conduct—but as noted, it was not a typical drug trafficking conspiracy and did not involve firearms or other collateral dangerous activity, separate and apart from the distribution of methamphetamine. The root cause of Defendant's criminal conduct and underlying criminal history (which the Court acknowledges is significant) is his addiction issues.   Defendant has had no disciplinary issues while incarcerated, and he has a loving and supporting family ready to facilitate his reentry into the community.

The Court must acknowledge its concerns about Defendant's ability to remain sober once released from prison, particularly given his history and failure to comply with his pretrial release conditions, resulting in the revocation of his bail.  However, as noted at his sentencing, his sobriety upon being incarcerated demonstrated a remarkable improvement in his well-being (Dkt. 46 at 15), and at this point he is receiving no programming or substance abuse treatment, whereas if released he would be able to at least receive treatment in some fashion  (Dkt. 49 at 19).  Moreover, the Court is hard-pressed to conclude that the risks of Defendant's return to substance abuse are any greater if released now as opposed to five months from now (or within two months to a halfway house).  In fact, due to the lack of treatment and lack of programming, there is a reasonable argument that Defendant's likelihood of returning to illegal drug use is higher if released as scheduled.

- 15 -

Accordingly, based on a careful consideration of the § 3553(a) factors, a reduction in Defendant's sentence under the circumstances is not inconsistent with those factors.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. 49) is GRANTED, and it is hereby ORDERED as follows:

1.      Defendant's sentence is hereby reduced to TIME SERVED and Defendant is ordered to be IMMEDIATELY RELEASED.  The Court directs the Bureau of Prisons to immediately commence the process of releasing Defendant from custody, and the United States Attorney's Office and United States Probation Office are directed to take all steps to communicate and facilitate Defendant's immediate release;

2.      Defendant's term of supervised release shall commence immediately upon his release from incarceration, subject to the terms and conditions set forth in the judgment (Dkt. 43) except that the conditions are modified as follows:

      a.      Following his release, Defendant must be transported directly to his mother's residence at 104 Wahl Road, Rochester, New York, and may not make additional stops on his return home;

      b.      Upon returning to that residence, Defendant must self-quarantine for fourteen (14) days;

      c.      Defendant shall serve five months on home detention subject to electronic monitoring, although implementation of the commencement of this home detention term and condition may be deferred up to thirty (30) days at the discretion of the

United States Probation Office, so as to ensure the safety of Defendant and Probation officers and personnel.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:      May 18, 2020
            Rochester, New York